BARKDULL, Judge.
By this appeal, this court is called upon to review a final decree rendered in the above causes, which were consolidated for purposes of final hearing.
This litigation evolves around a concession agreement given by the Dade County Port Authority in respect to the transportation of passengers from the county-owned airport to and from points within Dade County. Said contract was entered into pursuant to the provisions of §§ 331.14, 331.-15, Fla.Stat., F.S.A. The initial contract provided that the company granted the exclusive concession rights was to furnish transportation for passengers and baggage between the airport and all points within the county. This provision of the contract was held not to comply with the statutory requirement that the contract relate to the airport and “designated points within such county”. See: Phil’s Yellow Taxi Co., Inc. of Miami Springs v. Carter, Fla. 1961, 134 So.2d 230; S & J Transportation, Inc., v. McGahey, Fla.App.1961, 135 So.2d 442.
It appears from the record that, following the rendition of the opinions in the above-cited cases, the Dade County Commissioners as the Port Authority amended their original concession agreement by providing [in reference to the points to be served] the following:
“ * * * between Miami International Airport and the following municipalities and points: Miami, Miami Beach, Surfside, Bay Ha&or Island, Bal Har-bour, North Bay Village, the Island of Key Biscayne (unincorporated area), University of Miami facilities, that certain area from Bakers Haulover Cut north to the boundary line of Dade and Broward Counties, and east of the Intercoastal Waterway to the Atlantic Ocean.”
Following this amendment to the original concession agreement, the appellees instituted [except the individuals constituting the Florida Railroad and Public Utilities Commission] two actions, the first of which was directed against the Port Authority and the transportation company, seeking to prevent the auto transportation company from operating under the contract because it failed to designate points within the county wherein the transportation could be provided under the exclusive rights provided in the statutes. The second cause of action was directed against the Florida Railroad and Public Utilities Commission and the Miami Beach Air Transport, Inc., to enjoin *452 what was contended to be an unlawful operation under a common carrier certificate, which purported to grant to Miami Beach Air Transport, Inc. the right to pick up and discharge passengers at the county terminal from any and all points in the same cities which had been designated between the Dade County Port Authority and the air transportation company.
Motions to dismiss were filed, addressed to the complaints in the several causes, which were overruled. By interlocutory appeal, the present appellants sought review of these orders on their motions to dismiss, which actions of the chancellor were affirmed by this court by opinions reported as follows: Gordon v. S & J Transportation, Inc., Fla.App.1962, 147 So.2d 339; Red Top Sedan Service, Inc. v. S & J Transportation, Inc., Fla.App.1962, 147 So. 2d 346. The causes being at issue, the chancellor set the matters for a consolidated hearing, at the conclusion of which he rendered the final judgment and/or decree here under review, as follows:
“S & J TRANSPORTATION, INC., a Florida corporation, et al., Plaintiffs, vs. NO 62C 399 (Proby) ALEXANDER S. GORDON, as Chairman, et al., Defendants.
EUGENESHOOP; S&J TRANSPORTATION, INC., a Florida corporation, et al., Plaintiffs, vs. NO. 62C 2821 (Proby) WILBUR C. KING, Chairman, et al., Defendants.
“FINAL JUDGMENT
“THIS CAUSE having come on to be heard for final hearing on the 24th day of October, 1962, and the court having heard testimony from Plaintiffs’ witnesses in support of the allegations of both of the complaints filed herein, and having considered the requests for admissions to all of the Defendants herein, and the answers thereto as evidence in these matters, and having been otherwise fully advised in the premises, the court is of the following opinion:
“The contract, dated October 8, 1958, with its subsequent amendment dated the 19th day of December, 1961, between the Defendant Red Top Sedan Service, Inc. and the Defendant Dade County Port Authority, is violative of Sec. 331.15(2) Florida Statute, and clearly contrary to the mandate of the Florida Supreme Court, as indicated by its opinion in Phil’s Yellow [Taxi] Cab Co., Inc., et al. vs. Jerry W. Carter, et al. [Fla.App.], 134 So.2d 230. The restriction in Florida Statute 331.15(2) requiring the Defendant Red Top Sedan Service, Inc. to operate to and from designated points is not met by fixing entire municipalities and areas as points. If the legislature had intended the Dade County Port Authority to execute a contract with a transportation company to operate to entire municipalities and areas or to all points and places in entire municipalities, it would have been exceedingly simple for the legislature to so indicate in its enactment. The legislature could have easily stated in clear and simple language that the Dade County Port Authority could grant a transportation company the right to transport to all points and places or to any point or place in every municipality in Dade County or use words of like import. This was not done and this court, as well as all courts in this state, is bound by the clear and definite phraseology in statutes. Tropical Coach Line, Inc. vs. Carter, et al. [Fla.], 121 So.2d 779. The Florida Supreme Court has clearly indicated in the Phil’s Yellow Taxi case, supra., that an inefficacious contract cannot be a firm foundation for a certificate of convenience and necessity *453 to be issued thereupon by the Florida Railroad and Public Utilities Commission. This court is of the firm opinion that the present contract is invalid and, pursuant to the procedure as indicated in Florida Statute 331.15(2), the Dade County Port Authority and Red Top Sedan Service, Inc. should enter into a contract that designates points. Although this court is not passing upon the number of points that should be designated in the contract, it should be a reasonable number so as to follow the intent of the legislature by its enactment of Florida Statute 331.15(2) and the entire Automobile Transportation Act (Chapter 323). [emphases by the court]
“As regards the operation of the Defendant Miami Beach Air Transport, Inc., the holder of common carrier certificate no. 297 issued by the Florida Railroad and Public Utilities Commission, this court is of the opinion that the common carriage service, presently being rendered between Miami International Airport and all points and places in Dade County, is unlawful. The Miami Beach Air Transport, Inc. corporation is a common carrier and the Florida Supreme Court has indicated by many decisions that there is a difference between (a) common carriage, (b) private contract carriage, and (c) carriage for hire. Tropical Coach Line, Inc., supra.; Orlando Transit Co. vs. Florida Railroad and Public Utilities Commission, 160 Fla. 795, 38 [37] So.2d 321. The Supreme Court has clearly indicated that the Florida Railroad and Public Utilities Commission cannot create a classification of transportation that has not been delineated by the legislature, as indicated by the legislature’s enactment of the Automobile Transportation Act (Chapter 323). The Defendant Miami Beach Air Transport, Inc., has been operating from the Miami International Airport to all points and places in Dade County and return. This court firmly believes that such common carriage operation was never intended by Chapter 323 to operate to all points and places, and that the Florida Railroad and Public Utilities Commission has certificated Miami Beach Air Transport, Inc., to operate in such a fashion solely because the operation of this corporation’s alter ego Red Top Sedan Service, Inc. was subject to attack because of Florida Statute 331.15 (2). The undisputed evidence in this cause shows that the drivers that operate Red Top Sedan Service limousines, are the same drivers that operate Miami Beach Air Transport limousines, and that the officers, directors, stock holders and employees of both corporations are exactly similar. It was also undisputed that all of the limousines are owned by Red Top Sedan Service, Inc. and simultaneously leased to Miami Beach Air Transport, Inc., and that all said limousines have the names of both transportation companies printed on the doors of the limousines and carry the printed certificate numbers issued by the Florida Railroad and Public Utilities Commission, i. e., 297 and 711. It appears that these corporations wanted to insure its operation and thus have dual certificates in the event that one of its operations was declared invalid, [emphasis by the court]
“This court must follow the intent of the Florida legislature and is mandated to obey the decisions of the Florida Supreme Court. The Automobile Transportation Act (Chapter 323) was passed so there be a differentiation of classifications of transportation so as to avoid overlapping types of transportation and thereby prevent ruthless, unbridled and destructive competition among auto transportation companies. Reiley [Riley] vs. Lawson [106 Fla. 521], 143 So. 619. The basic difference between carriage for hire and common carriage, according to the Automobile *454 Transportation Act, is that common carriage must operate over public highways, over regular routes, or on fixed schedules or between fixed termini, Florida Statute 323.01(7) (a). Carriage for hire means any auto transportation company engaged in the transportation of persons or property and over the public highways of this state for compensation, which is not a common carrier or contract carrier but transports such persons or property in single, casual, and non-recurring trips. Florida Statutes 323.01(9). The definitive part of the Automobile Transportation Act is clear and unambiguous and this court is bound by the definite phraseology contained in a legislative enactment. Tropical Coach Line, Inc. [Phil’s Yellow Taxi Co., Inc., of Miami Springs] vs. Jerry W. Carter, et al., 134 So.2d 230. The Miami Beach Air Transport, Inc., corporation can therefore not operate its limousines to all points and places or be allowed to pick up passengers at any point or place in Dade County and transport these passengers to the Miami International Airport. On the other hand, the Plaintiffs herein cannot travel on a route or have schedules, since this would be unfair competition to common carriage. Jarnell [Jarrell] vs. Orlando Transit Co., [123 Fla. 776] 167 So. 667 [664], [emphases by the court]
“It is obvious that a contract carrier, pursuant to Florida Statute 331.15 (2), cannot provide individual service, and also that a common carrier by the very nature of its operation, as described in the Automobile Transportation Act, cannot provide a door-to-door type of service. It is of no significance that the Defendant transportation companies contend that their vehicles are restricted solely to an airport passenger transportation in providing this door-to-door service. As pointed out by the Plaintiffs herein, if individual service is allowed to and from Miami International Airport, then individual service could be allowed to and from all movie houses, railroad stations, race tracks, restaurants, etc., so that the taxicab industry would be obliterated.
“As a direct result of the operations of both transportation companies and actions of the Dade County Port Authority and the Florida Railroad and Public Utilities Commission, the taxicab Plaintiffs herein are daily suffering irreparable financial losses which are unascertainable, and in view of the opinion of this court are entitled to the relief prayed for. S & J Transportation, Inc., et al., vs. Ben C. McGahey, et al., [Fla.App.] 135 So.2d [442] 443; Merryman vs. Southern Tours, [120 Fla. 440] 162 So. 897. [emphases by the court]
“IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:
"1. That in case no. 62C 399 the Defendant Red Top Sedan Service, Inc., its agents, employees, servants and assignees be and are hereby enjoined from operating limousines from the Miami International Airport to all points and places in the following municipalities and areas: Miami, Miami Beach, Surfside, Bay Harbor Island, Bal Harbour, North Bay Village, the Island of Key Biscayne (unincorporated area), University of Miami facilities, that certain area from Bakers Haulover cut north to the boundary line of Dade and Broward Counties and east of the intercoastal waterway to the Atlantic Ocean. Said transportation company is further enjoined from picking up passengers at all points and places in the above named municipalities and areas and transporting said passengers and their baggage to the Miami International Airport.
“2. That the Dade County Port Authority and all of its agents, servants and employees are hereby enjoined from enforcing its present contract with *455 Red Top Sedan Service, Inc. until such time as said contract is amended by the designation of points, as indicated by Florida Statute 331.15(2).
“3. That in case no. 62C 2821 the Defendant Miami Beach Air Transport, Inc., its agents, employees, servants and assignees are enjoined from picking up passengers from all points and places in Dade County and transporting said passengers and their baggage to Miami International Airport. Said defendant transportation company is further enjoined from picking up passengers and their baggage at Miami International Airport and transporting said passengers and their baggage to all points and places in Dade County.
“4. The Florida Railroad and Public Utilities Commission and all of its agents, servants and employees are hereby enjoined from issuing any certificate of public convenience and necessity to either Red Top Sedan Service, Inc. or Miami Beach Air Transport, Inc., which would be in violation of the intent of the injunction issued herein.
“DONE AND ORDERED in Chambers in Miami, Dade County, Florida, this 21 day of December, 1962.
“Lucien C. Proby, Jr.
“LUCIEN C. PROBY, JR.
“Judge, Circuit Court”
Following the rendition of the above by the chancellor [styled in both of the causes referred to], an appeal was duly prosecuted by Red Top Sedan Service, Inc., and Miami Beach Air Transport, Inc., which appeal was joined in by the individuals constituting the Dade County Port Authority. The Authority having only been parties to the action involving Red Top Sedan Service, Inc., this joinder would only be for the purpose of determining the validity of the contract between the Port Authority and Red Top Sedan Service, Inc. No appeal was prosecuted by the individuals constituting the Florida Railroad and Public Utilities Commission and, therefore, pursuant to Rule 3.11(a), Florida Appellate Rules, 31 F.S.A., they became parties-appellees to so much' of this cause as relates to the original suit contesting the certificate of necessity and convenience awarded to Miami Beach Air Transport, Inc.
The effect of the interlocutory appeal, sustaining the actions of the chancellor in denying the motions to dismiss filed in the several actions, was that of establishing the “law of the case” in that the motions urged as a ground “failure to state a cause of action”. See: Ferguson v. Brogan, 111 Fla. 224, 149 So. 772; 2 Fla. Jur., Appeals, §§ 403, 404.
 At the consolidated final hearing, the only evidence adduced by the respective defendants was certain records of the Florida Railroads and Public Utilities Commission in reference to the certificate of necessity and convenience issued to Miami Beach Air Transport, Inc., and the certificate issued to Red Top Sedan Service, Inc. It appears that the findings of the chancellor were amply supported by the record and, therefore, should not be disturbed by this court. See: Crown Central Petroleum Corp. v. Standard Oil Co., Fla. App.1961, 135 So.2d 26. It is also apparent that the chancellor’s conclusions of law as to the violation of the provision of § 331.15(2), Fla.Stat., F.S.A. was a correct interpretation of the statute. The statute provides that the contract shall be “between * * * designated points within such county”, and the blanket designation of certain municipalities and unincorporated area of the county does not meet the test of “designated points”, as provided in the statute. Certainly the Dade County Port Authority, under the authority of the statutes, has the power to enter into an exclusive contract with an automobile transportation company between its terminal facility and certain “designated points within the county” or “designated points within municipalities of the county”. However, any such contract must provide *456 that the service be between the airport terminal and fixed points within the county or municipality. “Points”, as set forth in the statute, is limited by the word immediately preceding it, “designated”. To designate is defined as follows in Ballentine, Law Dictionary with Pronunciations (2d ed. 1948):
“To mark out and make known; to point out; to name; to indicate; to signify a choice or selection. See State [ex rel. Rankin] v. Madison State Bank, [77] Mont. [498], 251 Pac. Rep. 548, quoting Webster’s Interna- " tional Dictionary.”
The approval by this court of the final judgment and/or decree rendered by the chancellor and this opinion are not to be construed as requiring or limiting the Dade County Port Authority to the designation of only one point in a given municipality or a given unincorporated area. But, the chancellor’s final judgment and/or decree and this opinion are to be construed as authorizing the Dade County Port Authority to enter into a contract with an automobile transportation company of its choice, providing for the carriage of passengers and baggage between its terminal facilities and certain designated points within the unincorporated area or several cities of this county. However, the number of points within a given unincorporated area or municipality should be reasonable in light of the geographical nature of the community, the type of area to be served [whether industrial, transient or permanent resident], etc., but in no event should the points be so numerous as to permit a door-to-door operation similar to the operation of the taxicab industry. The Supreme Court of Florida, in Phil’s Yellow Taxi Cab Company, Inc., of Miami Springs v. Carter, supra, recognized the distinction between the two services when it said [in reference to the concession agreement which is involved in this action] the following:
“ * * * The service to passengers arriving at the airport and leaving it is of a character distinct from taxicab service, as we said in Roberts v. Carter, Fla., 76 So.2d 789. The distinction seems to have been recognized by the county in the contract we have described for it was provided in that instrument that ‘taxicab service (was) specifically excluded.’ * * * ”
Although not raised by assignments of error, it has been urged by pleadings filed in this cause and during the oral argument that there was a fundamental error going to the question of jurisdiction, in the chancellor entertaining and ultimately rendering an injunction against Miami Beach Air Transport, Inc., and the Florida Railroad and Public Utilities Commission, who were the defendants in the second suit referred to above. This alleged error being jurisdictional, notwithstanding the lack of assignment of error, it has been considered. 2 Fla.Jur., Appeals, § 130; Rule 3.7 (i), Florida Appellate Rules. The principal point urged in this connection is that the only relief that may be sought against an allegedly illegally issued certificate of necessity and convenience by the Florida Railroad and Public Utilities Commission is by petition for certiorari to the Supreme Court of Florida under the provisions of § 350.-641, Fla.Stat, F.S.A. Pursuant to the aforesaid authority, an aggrieved party may have the right to petition the Supreme Court of Florida for review by writ of certiorari, but this is not the exclusive remedy afforded a person aggrieved or injured by the issuance of an illegal certificate of necessity and convenience by the Florida Railroad and Public Utilities Commission. If this remedy by certiorari is inadequate, then resort to the traditional court of chancery may be had for appropriate relief. See Louisville & N. R. Co. v. Railroad Com’rs, 63 Fla. 491, 58 So. 543, 44 L.R.A.,N.S., 189; R. B. “Dick” Wilson, Inc. v. Hargleroad, 165 Neb. 468, 86 N.W. 2d 177; Sayers v. Montpelier & W. R. R. R., 90 Vt. 201, 97 A. 660; 27 Fla.Jur., Railroad and Public Utilities Commission, *457 § 63; 4 Univ. of Fla.L.Rev., Injunctive Relief in Florida, 602.
Therefore, for the reasons stated, the actions of the chancellor here under review be and they are hereby affirmed.
Affirmed.