**VERNON BALL, d/b/a ISLAND MOBILE HOMES, Plaintiff**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS PUBLIC SERVICES COMMISSION and FRUSTRATED RESIDENTS OF GOLDEN GROVE PARK, Defendants**

Civil No. 1986/218

District Court of the Virgin Islands

Div. of St. Croix

February 26, 1987

ELLEN G. DONOVAN, ESQ., St. Croix, V.I., *for plaintiff*

NORMAN P. JONES, ESQ., Office of the Attorney General, St. Croix, V.I., *for defendants Government of the Virgin Islands and Public Services Commission*

ABDUL R. ALI, St. Croix, V.I., *pro se for FROGGP*

O'BRIEN, *Judge*

## MEMORANDUM OPINION AND ORDER

The question before us is whether a landlord that supplies well water to its tenants is a public utility within the meaning of 30 V.I.C. § 1(a)(4). We answer affirmatively but hold that mere inclusion within this definition does not constitute a taking to implicate the Just Compensation Clause of the Fifth Amendment.

## I. FACTS

Plaintiff Vernon Ball owns and operates a mobile home park in the Golden Grove area of St. Croix in the name of Island Mobile Homes. The venture includes forty trailers and houses, most of which are owned by Ball, as well as a laundry and swimming pool for use by the approximately 150 Island Park residents. Well water is supplied to the tenants who are billed monthly according to consumption.

In May 1986, a series of water rate changes prompted the tenants to band together under the acronym FROGGP—Frustrated

Residents of Golden Grove Park—and petition the territory's Public Services Commission to regulate the price Ball charges for water.[1] The Commission premised its jurisdiction over the matter on the opinion of the territory's attorney general, rendered at the agency's request, that the trailer park venture constituted a public utility because of the water supply service. This opinion, in turn, rested primarily on an earlier declaration that a condominium company which supplied water to the apartments was a utility.[2]

The Commission postponed a hearing on FROGGP's complaint to allow Ball to obtain the declaratory judgment of this Court that a landlord is not a public utility. This issue is now squarely presented on the cross-motions of Ball and the defendant Government for summary judgment.

## II. DISCUSSION

By definition, landlords who supply water, electricity or gas are generally not viewed as public utilities because the services are restricted to a circumscribed group of consumers—their tenants. It is a matter of black letter law that:

> [W]hether or not a particular enterprise is subject to public utility regulation is generally determined by whether or not the agency conducting the enterprise holds itself out to service the public at large in a particular area. To be subject to regulation as a public utility, it is generally considered necessary that the supplier of the utility service offer this service to anyone desiring it in the area served by the facilities involved. This has been the ordinary meaning used by the courts in determining whether the property is "devoted to a public use," and is the general standard applied to landlords who supply services to their tenants. Under this standard, the overwhelming majority of courts have held that a landlord who provides such services to its tenants is not subject to regulation as a public utility.

75 A.L.R.3d Utility Regulation of Landlords § 2, p. 1207–08 (1977). See also 73B C.J.S. Public Utilities § 3, p. 129–32 (1983); 64 Am. Jur. 2d Public Utilities §§ 1–3, p. 549–52 (1972). Virtually every

---

[1] The tenants allege that the per gallon cost of water soared from .004 cents to four cents and eventually fell to the current charge of one and one-half cents. (Aff. FROGGP Pres. Abdul R. Ali.)

[2] 7 V.I. Op. A.G. 386 (1974).

American jurisdiction incorporates this concept into its statutory definition of public utility[3] or its common law.[4]

The Virgin Islands departs radically from this rule. The definition of a public utility is codified in pertinent part at 30 V.I.C. § 1(a):

> The following services provided by an individual, firm, co-partnership, corporation or other person for compensation are declared to be affected with a public interest and are defined to be a public utility subject to this chapter, and the person providing such service to be a "public utility".
>
> (4) water supply services; except retail deliveries.

■■ Interpretation of § 1(a)(4) is a matter of first impression. There is neither legislative history nor precedent from another jurisdiction analyzing similar language to amplify its meaning. However, we believe that none is required. The statute is clear that, with the exception of retail deliveries, every person or entity supplying water within the territory serves the public interest and is subject to governmental utility regulation. We concede that stretched to its logical extreme, this reading may render every landlord a public utility—a result we presume is unprecedented. Moreover, part of every landlord-tenant relationship would be governed by the territory's Public Service Commission, an equally untenable result. However, "we are constrained to interpret and enforce the . . . laws as [the legislature] has enacted them. We may neither re-write the statutes nor divine an interpretation that is inconsistent with their clear language. And this rule applies despite the most absurd results." Danbury Inc. v. Olive, 627 F. Supp. 513,

---

[3] See e.g., Hardin Water Supply Corp. v. City of Hardin, 671 S.W.2d 505, 506 (Tex. 1984); City of Sun Prarie v. Public Service Commission, 154 N.W.2d 360, 361–62 (Wisc. 1967); Drexelbrook Assoc. v. Pennsylvania Public Utility Commission, 212 A.2d 237, 239 (Pa. 1965); State ex rel. Utilities Commission v. Mackie, 338 S.E.2d 888, 893 (N. Car. App. 1986). But see Cottonwood Mall Shopping Center v. Utah Power & Light Co., 440 F.2d 36 (10th Cir.), cert. denied, 404 U.S. 857 (1971); Fletcher Properties, Inc. v. Florida Public Service Commission, 356 So. 2d 289 (Fla. 1978); Griffith v. New Mexico Public Services Commission, 520 P.2d 269 (N. Mex. 1974); Lewandowski v. Brookwood Musconetcong River Property Owners' Assoc., 181 A.2d 506 (N.J. 1962).

[4] See e.g., Van Dyke v. Geary, 244 U.S. 49, 61 (1917) (Arizona law); Petition of Pfenning, 385 A.2d 1070, 1072 (Vt. 1978); Lockwood Water Users Assoc. v. Anderson, 542 P.2d 1217, 1220 (Mont. 1975); Grever v. Idaho Telephone Co., 499 P.2d 1256, 1258 (Idaho 1972); Wilhite v. Public Service Commission, 149 S.E.2d 273, 281 (W. Va. 1966); Glenbrook Development Co. v. City of Brea, 61 Cal. Rptr. 189, 192 (Cal. Ct. App. 1967).

514 (D.V.I. 1986) (citations omitted). We hold, therefore, that Island Mobile Homes is a public utility within the definition of 30 V.I.C. § 1(a)(4).

■ Next, Ball argues that § 1(a)(4) violates his rights under the Just Compensation Clause of the Fifth Amendment.[5] The Virgin Islands cannot constitutionally take private property without fairly compensating its owner and it is beyond dispute that "while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415 (1922). See also R. Rotunda, J. Nowak & J. Young, Constitutional Law: Substance and Procedure, § 15.12 (1986).

■ It is premature to decide whether a taking has occurred since Ball's property has yet to be effected by the public utility statutes. His sole complaint is that the Commission may impose unduly onerous restrictions upon his water supply activities in the future. Absent proof of a taking, it is obviously impossible to calculate the amount of compensation due. See Holder v. Virginia Surface Mining & Reclamation Assoc., 452 U.S. 264, 295 (1981). This means, of course, that there is no concrete controversy concerning the effect of § 1(a)(4) and, therefore, we have no jurisdiction over this complaint. Hodel, supra at 294–97.

■ Nor can we find that § 1(a)(4) is facially defective. "A statute regulating the uses that can be made of property effects a taking if it 'denies an owner economically viable use of his land . . . .'" Hodel, supra at 296 quoting Agins v. Tiburon, 447 U.S. 255, 260 (1980). The sole effect of Island Mobile Homes' inclusion within § 1(a)(4) is that it is now labeled a public utility and subject to the jurisdiction of the Public Service Commission. The Virgin Islands Code and agency regulations are devoid of controls on how Ball uses the well and how much he charges for its water. Consequently, we find, that Ball's complaint does not ripen for purposes of our jurisdiction until either or both is unduly regulated. Id.[6] We hold,

---

[5] The Just Compensation Clause is incorporated into the Virgin Islands' Bill of Rights. 48 U.S.C. § 1561.

[6] For example, a municipal ordinance requiring a water company to supply charitable organizations without charge was struck down as facially violative of the Just Compensation Clause. City of Chicago v. Rogers Park Water Co., 73 N.E. 375, 378–79 (Ill. 1905).

therefore, that § 1(a)(4) is constitutional, both facially and as applied to Island Mobile Homes.

## III. CONCLUSION

We conclude that Island Mobile Homes is a public utility pursuant to 30 V.I.C. § 1(a)(4) but this alone does not constitute a violation of the Fifth Amendment's Just Compensation Clause.

## SUMMARY JUDGMENT

THIS MATTER is before the Court on the cross-motions of the parties for summary judgment. Having filed a memorandum opinion of even date herewith, and the premises considered, now therefore it is

ORDERED and ADJUDGED:

THAT the motion of the plaintiff for summary judgment is DENIED; and

THAT the motion for summary judgment by the government is GRANTED and it is hereby declared that Island Mobile Homes is a public utility within the meaning of 30 V.I.C. § 1(a)(4).