356 So.2d 289 (1978)
FLETCHER PROPERTIES, INC., Etc., Petitioner,
v.
FLORIDA PUBLIC SERVICE COMMISSION, Respondent.
No. 52157.
Supreme Court of Florida.
February 23, 1978.
*290 Kenneth F. Hoffman of Rogers, Towers, Bailey, Jones & Gay, Tallahassee, for petitioner.
Leon F. Olmstead and Raymond E. Vesterby of the Florida Public Service Commission, Tallahassee, for respondent.
KARL, Justice.
We have for review by petition for writ of certiorari a declaratory statement by the Public Service Commission.
Petitioner filed a petition for declaratory statement with the Florida Public Service Commission to determine the applicability of Chapter 367, Florida Statutes (1975), and Chapter 25-10, Florida Administrative Code, rules of the Public Service Commission, to petitioner and, more specifically, to determine whether petitioner constitutes a public utility. In its petition for declaratory statement, petitioner alleged:
"Fletcher Properties is managing agent for Baymeadows, a private residential community located in Southside Jacksonville, and is part owner of Baymeadows, as tenant in common, along with Centennial Equities Corporation and Baymeadows, Inc. This community is provided sewer and water service by Jacksonville Suburban Utility Corporation. (The community presently includes approximately 242 occupied condominiums, 826 rental apartments, and recreational facilities).
"By agreement with Jacksonville Suburban Utility Corporation water provided to Baymeadows is master metered, and Baymeadows (the owners) retain [sic] ownership of the lines and lift stations and perform maintenance.
"Billing for services has been by Jacksonville Suburban Utilities Corporation. In the past Baymeadows has recouped these costs from the various apartment complexes and condominium associations on an equal share basis.
"Baymeadows is also planning to begin a single family home subdivision. Jacksonville Suburban Utilities Corporation has approved service of this addition, but will not bill these customers direct, since it does not own the lines and the meters will be individually installed at each residence.
"It is possible that Baymeadows could read the meters but pay on a master meter basis to Suburban Utilities, and then recover the costs from the individuals.
"In any event, since Jacksonville Surburban [sic] Utilities is in fact a public utility providing the water and sewer services, with Baymeadows' pipes merely acting as conduits, and since payment for services is made to Jacksonville Suburban Utilities, with Baymeadows acting as a money collector, it would appear that Baymeadows is not a utility as defined at Section 367.021, Florida Statutes."
Additional information was requested by the Public Service Commission regarding how Fletcher Properties recoups the cost of water and sewer utility service from the various apartment complexes and condominium associations on an equal share basis, how Jacksonville Suburban Utilities bills for services it provides and how charges for water and/or sewer service to the future single-family home subdivision will be handled. Petitioner responded that Fletcher *291 Properties recoups the cost of water and sewer utilities service from various apartment complexes and condominium associations on an equal share basis per occupied unit after an allocation of a flat $200.00 to the Tennis Club served by Fletcher; that Jacksonville Suburban Utilities bills Fletcher directly every three months for total consumption through a master meter located at the entrance to Baymeadows at their approved tariff rates from multiple dwellings; that as to the proposed single-family subdivision, Fletcher proposes to install individual residential meters on each home, although water will go through the master meter; and that if Jacksonville Suburban Utilities does not service the homes, Fletcher will have to read the meters itself and allocate usage to each homeowner at the same rate that Jacksonville Suburban bills Fletcher.
The Public Service Commission issued its declaratory statement on June 2, 1977, finding that the operations of petitioner in providing water and sewer utility service are within the definitions of a utility in Section 367.021, Florida Statutes (1975), and are not exempt under Section 367.022, Florida Statutes (1975). The Commission reasoned as follows:
"Chapter 367, Florida Statutes, is the `Water and Sewer System Regulatory Law' (Section 367.011(1), F.S.). A `utility' thereunder, `means water or sewer utility and, except as provided in Section 367.022, includes every person, lessee, trustee or receiver owning, operating, managing, or controlling a system, or proposing construction of a system, who is providing, or proposes to provide, water or sewer service to the public for compensation.' (Section 367.021(3)).
"Exempt from regulation, insofar as herein relevant, are `(5) Landlords providing service to their tenants without specific compensation for the service; (6) Systems designed to serve or serving one hundred persons or less; and (7) Nonprofit corporations, associations, or cooperatives providing service solely to members who own and control such nonprofit corporations, associations or cooperatives.' (Section 367.022, F.S.)
"Fletcher Properties is manager and part owner of a development containing approximately 242 occupied condominiums, 826 rental apartments, and recreational facilities. By agreement with Jacksonville Suburban Utilities Corp., water service from Jacksonville Suburban Utilities Corp. (Jacksonville Suburban) is master-metered at the entrance to the Fletcher development. Sewage service is provided on the same basis.
"Fletcher is planning construction of some single-family homes and proposes to individually meter them, the meters to be read, although all water will go through the master-meter. Charges to the single family units will be on the same rate Jacksonville Suburban bills Fletcher.
"It is apparent from the above facts, that the Fletcher operations relating to water and sewer service do not fall within the above listed exemptions from Public Service Commission regulation. This, then, leaves only the question whether or not the `utility' and `public' parts of the definition are applicable.
"It is clear that Fletcher is `providing water and sewer utility service', [sic] and is obtaining compensation therefor.
"The application of the term `public' has been considered previously. (See Order No. 7415, Docket No. 73359-W). The service must be available to the indefinite public (not tenants). Order No. 4874, Docket No. 69319-EU, 85 PUR 3rd, 107; service must be available to all individuals [sic] in general without discrimination, within a given area, including subvendees, tenants and others, with whom Fletcher had no contractual relations. (Village of Virginia Gardens v. City of Miami Springs, 171 So.2d 199 (1965) Fla. [App.]; Lorch v. Read Investment Company, and cases cited therein, 96 PURNS 120, 122, Wisconsin (1952).)
"From the facts cited above, it is apparent that the operations of Fletcher Properties, Inc., in providing water and sewer utility service, are within the definitions of a utility in Section 367.021, *292 Florida Statutes, and are not exempt under Section 367.022, Florida Statutes. Accordingly, it must comply with Chapter 367, Florida Statutes, and Chapter 25-10, Florida Administrative Code. This is particularly so as to the condominium units and others not tenants of Fletcher."
We agree with the determination by the Public Service Commission that petitioner is a water and sewer utility within the provisions of Chapter 367, Florida Statutes (1975), and Chapter 25-10, Florida Administrative Code, for the reasons stated in the declaratory statement of the Commission.
Petitioner's assertion that respondent, by its statement, is establishing policy concerning the definition of water and sewer utility and that such determination may only be made by rule is without merit since respondent did not make its decision based on uncodified policy. "Utility" is defined by statute and decisional law, and compensation is not a term of art. We have examined the remainder of the issues raised by petitioner, in light of the record and briefs before us, and find them to be likewise without merit.
Accordingly, the petition for writ of certiorari is denied.
It is so ordered.
OVERTON, C.J., and BOYD and ENGLAND, JJ., concur.
ADKINS and HATCHETT, JJ., dissent.